IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

EMY STEWART, )
)
Plaintiff, )
) Case No. 3:14-cv-00110
v. ) Senior Judge Haynes
)
DAVITA, )
)
Defendant. )

# MEMORANDUM

Plaintiff, Emy Stewart, filed this action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., against Defendant, DaVita Healthcare Partners, Inc. ("DaVita"), her former employer. Plaintiff, who was employed with DaVita as an administrative assistant, alleges that the termination of her position was in interference with and retaliation for her use of FMLA leave.

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 15), contending, in essence, that: (1) Plaintiff cannot prove interference with her FMLA leave because she received all the leave she requested; (2) Plaintiff was terminated because her position was eliminated, not on account of her taking FMLA leave; (3) Plaintiff cannot prove retaliation because she cannot show a causal connection between her FMLA leave and the elimination of her position; and (4) Plaintiff's reliance on temporal proximity alone is insufficient to establish pretext. In response, Plaintiff contends that she has presented sufficient facts to establish her claims.

For the reasons set forth below, the Court concludes that Plaintiff's FMLA interference and retaliation claims fail as the proof shows that (1) Plaintiff's position as an administrative assistant was eliminated due to budget cuts, (2) the successor to the person whom Plaintiff supported already had an administrative assistant, and (3) Plaintiff failed to show that equivalent positions existed.

Further, the position of another administrative assistant who did not have a history of FMLA leave was also eliminated and another employee who took FMLA leave is still employed with Defendant. Therefore, the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 15) should be granted.

## A. Findings of Fact[1]

Defendant DaVita Healthcare Partners, Inc. owns and operates dialysis clinics across the country. (Docket Entry No. 18, Dena Levine Declaration, at ¶ 3). In December 2011, Plaintiff began working for Defendant as an administrative assistant in DaVita's Trailblazer Group. (Docket Entry No. 15-1, Plaintiff Deposition at 2-3). Plaintiff worked for Mike Rowe in the executive suite, scheduling meetings, creating and updating spreadsheets, and planning events. Id. at 4, 7-8. While working for Rowe, Plaintiff also occasionally provided remote assistance to Mary Teising, Vice President of Home Modalities, with updating a spreadsheet "every two weeks or monthly" and scheduling meetings. Id. at 8-9; Docket Entry No. 19, Teising Declaration at ¶ 3. Teising's position does not require full time administrative support. (Docket Entry No. 19 Teising Declaration at ¶ 3). Plaintiff assisted Teising maybe two hours a week. Id.; Docket Entry No. 15-1 at 9.

In August 2012, Plaintiff requested and received FMLA maternity leave. (Docket Entry No. 15-1, at 5). Rowe granted Plaintiff twelve weeks off, and Plaintiff returned to work in November 2012. Id. at 5. When Plaintiff returned, Rowe was no longer employed at DaVita. Id. at 6. Plaintiff

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 276 (1986). The Court concludes that, under the applicable law, there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed.R.Civ.P. 56(d).

was reinstated and was told to "hang out" until a new assignment could be found for her. Id. Two weeks later, Plaintiff became the executive assistant for Anu Pardeshi, performing similar tasks that she had for Rowe. Id. at 6-8. Plaintiff continued to assist Teising for approximately two hours a week. (Docket Entry No. 21, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts at ¶ 8).

In August 2013, Plaintiff requested and received a second FMLA maternity leave, and her leave began on August 19, 2013. Id. at ¶¶ 9-10. In September 2013, Pardeshi resigned from his employment with DaVita. (Docket Entry No. 18, Dena Levine Declaration at ¶ 7; Docket Entry No. 19, Mary Teising Declaration at ¶ 4). After learning from a co-worker about Pardeshi's resignation, Plaintiff, in a September 11, 2013 email to Teising, wrote "I'm not sure if you know, but Anu is leaving DaVita at the end of SEPT which puts me in a vulnerable position once I return from maternity leave NOV 11. :( I am stressing that I am going to lose my job. Do you need a full time assistant or know of anyone else that could use me remotely?" (Docket Entry No. 15-1, at 18-20, 53). Teising responded, "Just heard about Anu. Surprise to me," but did not comment on the status of Plaintiff's position. Id. at 53.

Pardeshi's successor, Hermina Yarde, did not need a full time assistant as she already had an administrative assistant. (Docket Entry No. 21 at ¶ 11). Teising also did not require a full-time administrative assistant. Id. at ¶ 5. During the time of Pardeshi's resignation, DaVita's Trailblazer Group was undergoing budget cuts that required the elimination of some positions. Id. at ¶ 13. On September 6, 2013, Dena Levine, DaVita's human resources Group Director for the Trailblazer Group, identified two positions for elimination in the Trailblazer Group: an administrative assistant in the Trailblazer Group office that was held by Plaintiff and an administrative assistant in the

3

Clinical Education Office that was held by Allison Behm Latham. (Docket Entry No. 18, Levine Declaration at ¶¶ 2, 4-5). These positions were identified because they were the only administrative assistant positions in those offices, their duties were minimal and their responsibilities could be easily redistributed. (Docket Entry No. 21 at ¶ 14). Plaintiff's position was also identified because Pardeshi's successor, Yarde, already had an administrative assistant. Id. Latham did not have a history of requesting or taking FMLA leave. Id. at ¶ 16. Plaintiff and Latham were eligible for rehire. (Docket Entry No. 18, Levine Declaration at ¶ 6). Levine did not notify Plaintiff about the decision to eliminate her position until Plaintiff returned from her leave. Id. at ¶¶ 7, 9.

On November 11, 2013, Plaintiff returned to work and was informed by Levine and Teising that Plaintiff's position was being eliminated. (Docket Entry No. 21 at ¶ 19). Plaintiff was allowed to continue working until December 1, 2013 so that her health benefits would continue until the end of the year. (Docket Entry No. 18, Levine Declaration at ¶ 9). Levine and Teising told Plaintiff she was welcome to use that time to seek other opportunities at DaVita. Id. at ¶ 9; Docket Entry No. 19, Teising Declaration at ¶ 7. Plaintiff was terminated on December 1, 2013. (Docket Entry No. 15-1 at 32).

Jennifer Fletcher, one of Plaintiff's former teammates in the Group VP Office took FMLA leave, returned to work and is still employed with DaVita. (Docket Entry No. 21, at ¶ 23).

### B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that [he] had to come

forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in original). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Electrical Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. ... [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex, 477 U.S. at 323 and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]... must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record

6

taken as a whole could not lead a rational trier of fact to find" for the
respondent, the motion should be granted. The trial court has at least some
discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the
> dispute about a material fact is "genuine," that is, if the evidence is such that
> a reasonable jury could return a verdict for the nonmoving party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that the
> inquiry involved in a ruling on a motion for summary judgment or for a
> directed verdict necessarily implicates the substantive evidentiary standard
> of proof that would apply at the trial on the merits. If the defendant in a
> run-of-the-mill civil case moves for summary judgment or for a directed
> verdict based on the lack of proof of a material fact, the judge must ask
> himself not whether he thinks the evidence unmistakably favors one side or
> the other but whether a fair-minded jury could return a verdict for the plaintiff
> on the evidence presented. The mere existence of a scintilla of evidence in
> support of the plaintiff's position will be insufficient; there must be evidence
> on which the jury could reasonably find for the plaintiff. The judge's inquiry,
> therefore, unavoidably asks whether reasonable jurors could find by a
> preponderance of the evidence that the plaintiff is entitled to a verdict –
> "whether there is [evidence] upon which a jury can properly proceed to find
> a verdict for the party producing it, upon whom the onus of proof is
> imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted).

7

It is likewise true that:

> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

8

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
>
> 6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

> 9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> 10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) whether the moving party has "clearly and convincingly" established the absence of material facts; (2) if so, whether the plaintiff has presented sufficient facts to establish all the elements of the asserted claim or defense; (3) if factual support is presented by the nonmoving party, whether those facts are sufficiently plausible to support a jury verdict or judgment under the applicable law; and (4) whether there are any genuine factual issues with respect to those material facts under the governing law.

Plaintiff asserts claims for FMLA interference and retaliation. For an interference claim, a plaintiff must establish that: "'(1) [s]he was an eligible employee, (2) defendant was a covered employer, (3) [s]he was entitled to leave under the FMLA, (4) [s]he gave defendant notice of [her] intent to take leave, and (5) the defendant denied [her] FMLA benefits or interfered with FMLA rights to which [s]he was entitled.'" Harris v. Metro. Gov't of Nashville and Davidson Cnty., Tenn., 594 F.3d 476, 482 (6th Cir. 2010) (citation omitted). Under the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), if a plaintiff establishes her prima facie case then the burden shifts to the defendant to prove a legitimate, nondiscriminatory reason for its decision. If the defendant successfully carries this burden, then the plaintiff must show that the

defendant's stated reasons are a pretext for its unlawful conduct. Donald v. Sybra, Inc., 667 F.3d 757, 761-62 (6th Cir. 2012); Jaszczyszyn v. Advantage Health Physician Network, 504 F. App'x 440, 447-448 (6th Cir. 2012).

"In order to qualify as an eligible employee, an individual must have worked for at least 12 months – and at least 1,250 hours during the previous 12-month period – for a covered employer. A covered 'employer,' in turn, comprises 'any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees [within 75 miles of the worksite] for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.'" Grace v. USCAR, 521 F.3d 655, 661 (6th Cir. 2008) (quoting 29 U.S.C. § 2611(2), (4)). Neither party disputes that Plaintiff was an eligible employee, that Defendant is a covered employer, that Plaintiff was entitled to FMLA leave, or that Plaintiff gave Defendant notice of her intention to take leave. Plaintiff alleges that Defendant interfered with her FMLA benefits that Defendant denies.

Plaintiff cannot establish a prima facie claim of interference with her FMLA leave because she received all of the leave she requested and she was allowed to complete her leave before being terminated. Travers v. Cellco P'ship, 579 F. App'x 409, 415 (6th Cir. 2014) ("Because [Plaintiff] received all the FMLA leave that she requested (and thus was not denied benefits as a result of any alleged violation), [Plaintiff] has not demonstrated prejudice."); see also Seeger v. Cincinnati Bell Telephone Co., LLC, 681 F.3d 274, 283 (6th Cir. 2012) ("'The issue [under the interference theory] is simply whether the employer provided its employee the entitlements set forth in the FMLA – for example, a twelve week leave or reinstatement after taking medical leave.'" quoting Arban v. West Publ'g Corp., 345 F.3d 390, 401 (6th Cir. 2003) and quoting Culpepper v. BlueCross BlueShield of

Tenn., Inc., 321 F. App'x 491, 496 (6th Cir. 2009) ("'[The plaintiff's] FMLA [interference] claim ... must fail. Culpepper received exactly what her doctor ordered – six days of FMLA leave.'")).

Plaintiff next asserts that Defendant interfered with her right to reinstatement following FMLA leave. Plaintiff contends that if Defendant could not have reinstated her to her previous position, Defendant should have offered her an equivalent position. Defendant asserts (1) that Plaintiff fails to show that she would have remained employed had she not taken FMLA leave; (2) that Plaintiff cannot identify any equivalent positions into which she could have been placed; or (3) that Plaintiff cannot show pretext.

"[I]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred." Hawkins v. Center for Spinal Surgery, 34 F.Supp.3d 822, 845 (M.D. Tenn. 2014) (citing Arban, 345 F.3d at 401). The right to reinstatement, however, "is not absolute because the right established 'shall [not] be construed to entitle any restored employee to ... any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.'" Hoge v. Honda of America Mfg., Inc., 384 F.3d 238, 245 (6th Cir. 2004) (quoting 29 U.S.C. § 2614(a)(3)(B)). Thus, "'an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request. An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." Arban, 345 F.3d at 401 (citations omitted); Hoge, 384 F.3d at 245.

Plaintiff does not dispute that Pardeshi resigned from DaVita, leaving her with no one to support full time, or that Yarde already had an administrative assistant. Plaintiff contends that although Defendant explains why she was not entitled to reinstatement to her old position, Defendant fails to explain why she could not have returned to an equivalent position. (Docket Entry No. 22 at 5).

Yet, Plaintiff fails to provide any evidence that an equivalent position existed in the Group VP Office in which she could have been placed or that Latham was offered or placed into an equivalent position. Plaintiff was informed of her termination on November 11, 2013, but was allowed to remain in her position until December 1, 2013. During this time, Plaintiff was able to apply to other openings at DaVita. Although she was "frantically looking on DaVita's website," Plaintiff did not identify any other position she could fill. (Docket Entry No. 15-1 at 25-26; Docket Entry No. 21 at ¶ 21). Plaintiff acknowledged that no one in her office needed administrative assistance. (Docket Entry No. 15-1 at 36). Although Defendant operates nationally and utilizes remote administrative assistants, Plaintiff did not apply for any out of state positions. Id. at 36-39. Plaintiff applied for a position of assistant recruiter and the position of comorbidity project coordinator. (Docket Entry No. 15-1, Plaintiff Deposition at 41-43). These positions' job titles do not suggest they are equivalent to Plaintiff's position as an administrative assistant, nor does Plaintiff provide any evidence as to a description of these positions, such as the qualifications for these positions, the job duties and responsibilities, the pay rate, or the hours. An "equivalent position" under 29 U.S.C. § 2614(a)(1)(B) is defined by the Secretary of Labor as: "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, prerequisites and status. It must involve the same or substantially similar duties

and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a). Plaintiff has not presented any evidence that an equivalent position was available or that she was qualified for it.

Therefore, the Court concludes that Plaintiff's claim for FMLA interference should be dismissed.

For an FMLA retaliation claim, a plaintiff must establish that: "(1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." Killian v. Yorozu Automotive Tennessee, Inc., 454 F.3d 549, 556 (6th Cir. 2006) (citing Arban, 345 F.3d at 404). As with an interference claim, the McDonnell Douglas burden shifting framework applies. Jaszczyszyn, 504 F. App'x at 447-448.

Plaintiff asserts that the temporal proximity between the beginning of her requested FMLA leave and the decision to eliminate her position establishes a causal connection. Plaintiff's leave began on August 13, 2013, and the decision to eliminate her position was made on September 6, 2013 – "a scant eighteen days" later. (Docket Entry No. 22 at 6). "'[T]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.'" Seeger, 681 F.3d at 283 (quoting DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004)). Here, under these circumstances, Plaintiff can demonstrate that close temporal proximity is suggestive of retaliation. See id.

Next, in the McDonnell Douglas framework, the burden shifts to Defendant to show a legitimate, non-discriminatory reason for the adverse employment action. Defendant has demonstrated that after Pardeshi's departure, Plaintiff did not have an individual to support. Defendant has also shown that budget cuts required the elimination of positions and that those positions were chosen because they had few duties that were easily redistributed to other employees. Further, Latham, whose position also was eliminated, had never requested FMLA leave. Thus, Defendant has established a legitimate, non-discriminatory reason for eliminating Plaintiff's position.

The burden now shifts to Plaintiff to demonstrate that Defendant's reason for her termination was a pretext for Defendant's unlawful action. A plaintiff can show pretext "by showing that the proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination." Donald, 667 F.3d at 762 (citing Grace, 521 F.3d at 670). "'[A] reason cannot ... be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason.'" Seeger, 681 F.3d at 285 (citation omitted).

Here, Plaintiff's pretext argument is based upon temporal proximity. Yet, "the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." Donald, 667 F.3d at 763. Plaintiff does not dispute the provided factual bases for her termination: that budget cuts were necessary in her department and that Pardehsi had resigned and his successor already had an administrative assistant. (Docket Entry No. 21 at ¶¶ 11, 13). Plaintiff admitted that she was not denied FMLA leave, she did not receive any disciplinary action for taking leave and that she did not hear "any rumors or gossip" about the reasons for her termination. (Docket Entry No. 15-1 at 26, 40). Further, Pardeshi resigned at the same time the Trailblazer Group was affected by budget cuts, the Group VP Office did not have any other individuals who required full time administrative assistance

and there were not any other positions in the Trailblazer Group that required full time administrative assistance. Moreover, Defendant eliminated the administrative position of Latham, who did not have a history of FMLA leave. See Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 317 (6th Cir. 2001) (in affirming summary judgment the Court stated that the plaintiff was unable to show that he was treated dissimilarly because he had invoked his FMLA rights from those employees who had not invoked their FMLA rights). Thus, the Court concludes that Plaintiff's FMLA retaliation claim should be dismissed.

Accordingly, for these reasons, the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 15) should be granted.

An appropriate order is filed herewith.

**ENTERED** this the _30th_ day of June, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge